## BAKER v. MOORE.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. CONVERSION BY AGENT—NECESSITY OF DEMAND.

Defendant's testator agreed with plaintiff to purchase certain real estate, taking deed in joint names, plaintiff to furnish one-half the purchase money, which she did, but testator took the deed in his own name, and made no accounting to plaintiff for the money advanced by her. *Held*, that there was a conversion of plaintiff's money, for which she could maintain an action without demand.

2. LIMITATION OF ACTIONS—WHEN CAUSE OF ACTION ACCRUED.

No demand being necessary, plaintiff's right of action is not governed by Code Civ. Proc. § 410, providing that, in cases where demand is necessary, and the right of action grows out of the detention of money by an agent or person acting in a fiduciary capacity, the limitation will not begin to run until the person having right to demand has actual knowledge of the facts, but the limitation began to run from the time the deed was taken.

3. SAME.

In an action for the recovery of money thus advanced to defendant's testator, evidence that plaintiff had no actual knowledge that the deed had been taken in the name of defendant's testator was immaterial, since ignorance of her rights did not prevent the running of the statute.

4. SAME—EVIDENCE.

Nor was it material to show that plaintiff's husband, who acted as the agent in making the agreement, had communicated to her the facts as to the contract.

Appeal from judgment on report of referee.

Action by Susan Baker against William Moore, executor of the last will and testament of Abel Scripture, deceased, to recover money alleged to have been wrongfully converted by the testator. There was a judgment for defendant, and plaintiff appealed. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM and MERWIN, JJ.

J. M. Whitman, for appellant.

King & Ashley (H. Prior King, of counsel), for respondent.

PUTNAM, J. The plaintiff and Abel Scripture, deceased, the defendant's testator, in the year 1865 entered into a contract to purchase lots 3 and 5, range 9, Dartmouth patent, great tract, situate in Warren county, N. Y. The plaintiff desired lot 3 for "the bark on it," but did not wish to buy lot 5, which was "a spruce lot." It was finally agreed that Scripture should purchase the two lots for $1,500, taking a deed to himself and the plaintiff; she to furnish one-half of the purchase price. Pursuant to such arrangement, in December, 1865, plaintiff advanced to Scripture $300, and in the following spring a further sum of $300. In 1866, and it may be assumed in anticipation of the delivery of the deed of the lots, Scripture, with the knowledge of the plaintiff, sold a quantity of logs from lot 5, for which he received the sum of $700. It was agreed that the balance of the purchase price for said lots—$150—due from the plaintiff, should come out of her share of the sum received for the logs sold, leaving a balance of $200 due her on account of said sale, less whatever sum might be arrears for taxes on the lots. It does not appear that this sum was ever paid, or that the plaintiff ever demanded it, or called upon Scripture for an account or settlement in regard thereto. In the transaction the plaintiff's husband, John P. Baker, acted as her agent, and he was produced and sworn by her as a witness on the trial. The evidence does not show that after advancing the $600 on the purchase price of said two lots, and the agreement with Scripture that the balance thereof should come out of the money received for the logs, plaintiff or her agent paid any attention to her interest in said lots until four or five years before the trial (probably about 1886 or 1887), nearly twenty years after the transaction. On or about August 22, 1867, Scripture obtained a deed of the said two lots, taking the title to himself alone, without the knowledge or consent of the plaintiff, as it is claimed; the deed received by him being recorded in the clerk's office of Warren county on January 3, 1868. On or about November 28, 1867, Scripture sold lot 3 for $1,200 to B. P. and F. V. Burhans by deed recorded in the Warren county clerk's office on the 6th day of January, 1868; and on or about January 30, 1871, lot 5, for $1,000, to one Ordway, by deed recorded in the same clerk's office on the 27th day of June, 1891. Whether Scripture, in making said purchase, actually used the money which he received from the plaintiff or his own funds, retaining in his possession the sum advanced by Mrs. Baker, does not appear. Abel Scripture died on the 9th day of February, 1889, 22 or 23 years after the transaction above detailed. A year or two before his death Mr. Baker called upon him for some money on plaintiff's account. In the conversation Scripture spoke of the plaintiff's claim being "outlawed." He said the lots were sold, that he had a right to sell them, and that he would pay over to the plaintiff her share of the proceeds. No action was commenced against the deceased, but after his death a claim, verified on the 23d day of June, 1890, was presented by the plaintiff to the defendant, as executor of the said deceased, and, the same being rejected, the matter was referred pursuant to the statute. The referee, at the close of the

testimony, held that the plaintiff's claim was barred by the statute of limitations, and directed a judgment of nonsuit in favor of the defendant, from which judgment the plaintiff appeals.

It is not claimed by the plaintiff—the deceased having received money from her under an agreement to make the purchase of the lots in question, and take the deed to her and himself, and having, without her knowledge and consent, wrongfully taken it in his own name as sole grantee—that a trust resulted in her favor, enforceable in this proceeding, under principles established in Lounsbury v. Purdy, 18 N. Y. 515; Roulston v. Roulston, 64 N. Y. 652; and kindred cases. It is therefore unnecessary to determine whether such a claim, if made, could have been sustained. Counsel for the appellant takes the position that, the defendant's testator having, as an agent or in a fiduciary capacity, received $600 from Mrs. Baker under a contract to use the same to purchase for her an undivided one-half interest in the lots above mentioned, and having, without her knowledge and consent, wrongfully taken the title thereto in his own name, she, upon the discovery of the facts, was entitled to demand and receive the sum so advanced to him. That such discovery was made shortly before the death of defendant's testator, and hence that under the provisions of section 410 of the Code of Civil Procedure the claim was not barred by the statute of limitations. It is a well-settled principle that, where one advances money to another for a particular object, and the latter appropriates it to a different purpose, the former may recover the money so advanced. McNeilly v. Richardson, 4 Cow. 607; Darragh v. Ross (Sup.) 7 N. Y. Supp. 864; Crosby v. Clark, 80 Hun, 426, 30 N. Y. Supp. 329; Dumond's Adm'rs v. Carpenter, 3 Johns. 183. Therefore the appellant, immediately after the 22d day of August, 1867, when the defendant's testator, in violation of his agreement, took the deed of the lots in question, was entitled to the money she had advanced.

The important question is whether, under the circumstances of the case, a demand for the return of the money was required to be made by the plaintiff of Scripture before she could maintain an action therefor. If so, the provisions of section 410 of the Code of Civil Procedure applied. If no demand was necessary, the plaintiff's claim was barred after the lapse of six years from the time of the wrongful act of the deceased in taking a deed of the lots to himself alone. We are of the opinion that when the defendant's testator wrongfully and in violation of his contract took the conveyance of the two lots to himself as sole grantee, a right of action arose in favor of the plaintiff to recover the money she had advanced, without a previous demand therefor. Scripture's relation to the plaintiff under the contract was that of an agent. He received her money, and agreed with it to obtain for her a conveyance of an undivided one-half interest in the lots. He acted in a fiduciary capacity. When he wrongfully took the deed, if he used her money to make the purchase, it was a conversion of it, and certainly no demand was required after such a wrongful appropriation of the plaintiff's property. If he retained the $600 in his own possession, he was under

an obligation to notify her of the fact that he had not used her funds, or taken the title of an undivided interest in the lots to her, and to return the money which she had advanced. Where money is in the hands of one belonging to another, under such circumstances that it is the duty of the former to pay it over, an action may be maintained therefor without any demand. Mills v. Mills, 115 N. Y. 80, 21 N. E. 714; Wood v. Young, 141 N. Y. 211–217, 36 N. E. 193; Adams v. Olin, 140 N. Y. 150–157, 35 N. E. 448; Hickok v. Hickok, 13 Barb. 632; Catterlin v. Somerville, 22 Ind. 482; Ferguson v. Dunn's Adm'r, 28 Ind. 58; Stacy v. Graham, 14 N. Y. 492; Watson v. Walker, 23 N. H. 471. The position of defendant's testator, under the circumstances, was similar to that of one who had misappropriated money. Acting in a fiduciary capacity, he had abused his trust. The $600 which the plaintiff sought to recover was not left with Scripture as an ordinary deposit. It was received by him for a specific object,—to buy for her a one-half interest in the two lots,— Scripture agreeing to use it for that purpose. When he took the deed to himself as sole grantee, without the knowledge or consent of the plaintiff, he was chargeable with a gross and fraudulent breach of duty. After such wrongful act he had in his hands $600 of the plaintiff's funds, which it was his duty to at once return to her, as by such wrongful act he had put it out of his power to use the money for the sole purpose for which he received it. This $600, therefore, after the wrongful and fraudulent act of the deceased, remained in his hands under such circumstances that it was his legal duty to return the money to the plaintiff.

Counsel for the appellant calls our attention to the case of King v. Mackellar, 109 N. Y. 215, 16 N. E. 201. The facts appearing in that case were very different from those shown in this. In the case cited the plaintiff deposited $3,000 with the defendant to invest for her, the deposit being for an indefinite period. The defendant assumed to make an investment which the court of appeals held to be unauthorized, and, in fact, not an investment. Under this holding the defendant remained in possession of the $3,000 under the original contract by which it was deposited with him for an indefinite period for the purpose of investment. Therefore it was held properly that before the plaintiff could recover the money she must demand its return. Again, in that case the defendant has assumed to take an assignment of a mortgage to the plaintiff and a deed for her benefit as an additional security. She had received interest on the mortgage for several years, and had in her possession the deed and the mortgage. It was, therefore, necessary for her, before she could maintain an action for the money she had deposited with the defendant, to return or offer to return the mortgage and the deed, and demand the return of her money. In the case under consideration the deposit made by the plaintiff with the defendant's testator was not for an indefinite period or purpose. Under the contract made it could only continue until Scripture purchased the said lots. If he performed his agreement, and used the money to buy for the plaintiff a one-half interest therein, the deposit would necessarily

cease to exist.    If he violated the contract, and wrongfully took a deed in which he was named as the sole grantee, his right to hold the money ceased, and his duty was to return it to the plaintiff.    No demand was required to entitle the plaintiff to recover the money which the deceased had no right under the contract to retain.    Deceased had obtained from plaintiff $600, to the possession of which, after his wrongful act, he was not entitled.    See Carr v. Thompson, 87 N. Y. 160–166.

The defendant urges that the referee erred in excluding certain evidence offered by him to show that John P. Baker, agent for the plaintiff, communicated to her the facts as to the contract he had made with Scripture.    The evidence so excluded was clearly immaterial.    So, also, we think, was the evidence offered to show that the plaintiff had no actual knowledge that the deed of the two lots had been taken to Abel Scripture as sole grantee until after his death. If we are correct in the views above expressed that no demand was necessary for the maintenance of an action by the plaintiff to recover the money in the possession of Scripture after his breach of the contract under which he received it, her claim was barred after the expiration of six years, although she had no actual knowledge of the wrong done her by the deceased.    It is only when a demand is required that the provisions of section 410 of the Code of Civil Procedure apply.    If no demand is necessary, a party seeking to recover money in the hands of an agent, for which he is entitled to maintain an action, although in ignorance of his rights, is not entitled to the benefit of that section.    So, in an action to recover a judgment for money on the ground of fraud under the provisions of section 382 of the Code of Civil Procedure, the ignorance of the plaintiff of the fraud perpetrated upon him will not prevent the running of the statute.

We conclude that the case was correctly disposed of below, and that the judgment should be affirmed, with costs.    All concur.