(55 App. Div. 617.)

## FOOTE v. FFOULKE et al.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. PLEADING—FORM OF ACTION—PRESUMPTION.
    Where it is doubtful from the allegations of a complaint whether the cause of action alleged therein is on a contract or in, tort, every intendment is to be made in favor of construing it as an action on a contract.

2. SAME.
    Where different inferences can be drawn from the allegations of a complaint as to the nature of the action, that which supports rather than one which destroys the remedy sought should be adopted.

3. ATTACHMENT—ACTION ON CONTRACT.
    Plaintiff alleged that defendant obtained money from him, as due on certain stock transactions; that the alleged transactions had never taken place, but that the money had been obtained by charging him as though they had. He charged a "conversion" and "misappropriation," and sought to recover the money so obtained. *Held* that, notwithstanding the use of the words quoted, the complaint stated a cause of action for money had and received, and not for conversion, and hence a warrant of attach-

ment reciting that it was granted in an action to recover "damages for breach of contract, express or implied," was not objectionable for variance.

Van Brunt, P. J., dissenting.

Appeal from special term.

Action by Wallace T. Foote, Jr., against Charles M. Ffoulke and another. From an order denying a motion to vacate an attachment, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Julius H. Cohen, for appellants.

Charles S. Foote, for respondent.

O'BRIEN, J. Upon an examination of the various objections raised as to the validity of this attachment, only one, we think, requires discussion, namely, that relating to the nature of the action. The warrant of attachment stated that it was granted for a cause of action to recover the sum of $8,199.67 "as damages for breach of contract, express or implied"; and it is insisted that there is a fatal variance between this statement in the warrant and the causes of action set forth in the complaint, in that the latter are directed to obtaining damages for conversion, and not for breach of contract. The defendants' construction of the complaint, as shown in the affidavit of their attorney, is, that it "charges the defendants with having failed to purchase and sell the securities as required of them by the plaintiff." There are some allegations, it is true, which charge the defendants with having converted the sums sued for to their own use; and these, considered by themselves, would support the theory of defendants that what the plaintiff sought was damages for conversion. It will not do, however, to take words used in one part of the complaint, and, by separating them from the context and considering them without reference to the complaint as a whole, to draw from them an inference favorable to the defendants' theory, which is opposed to the one to be deduced from a reading of the whole complaint, and the one which the pleader evidently had in mind in framing it. As said in McDonough v. Dillingham, 43 Hun, 493 (headnote):

"Where the allegations of the complaint are such as make it doubtful whether the cause of action therein alleged is on contract or in tort, every intendment is to be made in favor of construing it as being an action on contract."

Although the fact stated would support an action in tort, the plaintiff was at liberty to waive the tort, as he did, and sue upon implied contract. Siebrecht v. Siegel-Cooper Co., 38 App. Div. 553, 56 N. Y. Supp. 425. Having elected so to do, his action is not for conversion, but for money had and received.

Another well-settled rule is that, where different inferences can be drawn, the one which will support, rather than one which will destroy, the action or remedy sought, should be adopted. As correctly urged by the respondent:

"The complaint herein seeks to recover damages for the breach of an implied contract on the part of the defendants to repay to the plaintiff certain sums of money which they had obtained of him, as due on certain alleged stock

transactions. The basis upon which he seeks to recover these payments so obtained is that the alleged transactions had never taken place, while the defendants had secured the plaintiff's money by charging him as if they had taken place."

If these allegations can be supported, then, clearly, the defendants had and received money of the plaintiff by their own wrongful acts, which, without demand, the plaintiff is entitled to recover. Bank v. Van Giesen, 18 Johns. 485; Stacy v. Graham, 14 N. Y. 492. It will be noticed, in the different causes of action, that, although the words "conversion" and "misappropriation" are used, what the plaintiff really seeks is, not the value of the stocks converted or moneys misappropriated, but the return of his own moneys, which he alleges the defendants obtained on their representations that they had certain dealings in stock for him, which resulted in an indebtedness to them, as shown by accounts rendered, which he duly paid. These transactions, he now claims, never occurred, but were feigned by the defendants for the purpose of wrongfully obtaining the moneys which he here seeks to recover. Such allegations, according to the definitions of the text writers and the authorities, will support an action for money had and received. Thus, in 1 Cow. Treatise (5th Ed.) p. 151, it is said:

"An action may be maintained in all cases where one has received money belonging to another, which, in equity and upon principles of natural justice, he should pay over to him. * * * Where property has been wrongfully taken from the owner and sold by the wrongdoer, the owner may waive the tort and affirm the sale, and maintain an action against the wrongdoer for the price of it, as money received by him to the owner's use. * * * Money is received under an implied promise to pay it to the proper owner * * * when paid under mistake or through the deceit of the other party. As, when two men are reckoning, if one, through mistake, overpays the other, the latter receives it to the use of him paying it; and, if one falsely tell me he has paid certain money or performed certain work for me, and I pay him for it, the money so obtained from me by deceit is received by him to my use."

These principles may also be found in the decisions. Thus, it has been held that assumpsit for money had and received is an equitable action, and as a general rule the question is as to which party the money justly belongs (Buel v. Boughton, 2 Denio, 91), and that, where a person has obtained the money of another by fraud, the law implies a promise to repay it, and an action will lie for money had and received. Fagan v. Knox, 1 Abb. N. C. 246, 252. Another early case on this subject is that of M'Neilly v. Richardson, 4 Cow. 607, which stated the rule to be (see syllabus) that:

"Where one advances money to another, to be employed in a particular manner, and he appropriates it to a different object, it may be recovered back, as money had and received to the use of him who advances it."

Also, see Baker v. Moore, 4 App. Div. 237, 38 N. Y. Supp. 559.

And in Putnam v. Wise, 1 Hill, 234, reference is made to the "well-known right of election" to bring assumpsit instead of an action for tort, and in the footnote it is said:

"There is considerable difficulty in determining under what circumstances this right of election between tort and assumpsit arises. Several English writers have stated the result of the decisions quite generally, thus: 'In many cases the law will raise a promise even from the wrongful acts of a party, and the plaintiff may waive the tort and sue in assumpsit. * * * There

are instances in which the law raises a promise from the acts of a party, and will not admit of evidence of his intention to commit a tort, in disavowal of such tacit promise.' * * * Mr. Phillips has been rather more explicit. He says: 'In some cases where goods have been wrongfully taken, the plaintiff may waive the tort and sue upon an implied contract as for goods sold and delivered.' He afterwards adds: "* * * The rule seems to be principally applicable to cases where the plaintiff has been induced by a fraud on the part of the defendant to make a contract with a nominal party, of which the defendant has derived the whole benefit.'"

Another interesting and more recent case is that of Ashner v. Abenheim, 83 Hun, 34, 31 N. Y. Supp. 514, where the plaintiff agreed to purchase tobacco at a certain sum per pound, and to pay in addition whatever might be the duty, and the defendant represented that the duty was 45 cents a pound, but paid only 35 cents; and it was held that the plaintiff could recover back the 10 cents per pound above the amount actually paid by the defendant. And a case somewhat similar to that before us is Seaman v. Low, 4 Bosw. 337, in which it was held that where, by the fraud of the defendant, the plaintiff was induced to contract to purchase 250 shares of stock, and made payments thereon, he could, on discovery of the fraud, rescind the contract and recover the money so paid, and that, before the Code, such money could be recovered by action of assumpsit under a declaration containing only the common-law counts.

Having concluded, therefore, that the present action is properly brought for money had and received, and not for conversion, we find no variance between the warrant and the complaint as to the cause of action stated. The order appealed from should accordingly be affirmed, with $10 costs and disbursements.

INGRAHAM, McLAUGHLIN, and HATCH, JJ., concur.

VAN BRUNT, P. J. I dissent. There is no evidence in the complaint of a waiver of the tort. On the contrary, an execution against the person could issue as a matter of right upon any judgment obtained under this complaint.